UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND, *et al.*, | Case No. 10 C 1659 |
| Plaintiffs, | Magistrate Judge Sidney I. Schenkier |
| v. | |
| LAKE CITY JANITORIAL, INC., *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER[1]

On May 28, 2010, plaintiffs – Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively "Funds"); James S. Jorgensen, Administrator of the Funds; and General Laborers' District Council of Chicago and Vicinity (the "Union") – filed a complaint against Lake City Janitorial, Inc. ("LCJ"), an Illinois corporation, for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et. seq.* ("ERISA"), and the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"); against KB Building Services Inc. ("KB") as the alter ego of LCJ; and against James A. Busby, the owner of these corporations, for common law fraud.

Specifically, the Funds allege that LCJ violated ERISA and Section 301(a) of the LMRA because it failed: to pay employee benefit contributions (Count I) and union dues (Count II); to submit reports and pay employee benefit contributions (Count III); and to submit requested audits (Counts IV and V). The Funds seek to hold KB liable as the alter ego of LCJ (Count VII), because

---

[1]On August 12, 2010, by consent of all parties and pursuant to Local Rule 73.1(b), the Executive Committee reassigned this case to this Court for all proceedings, including entry of final judgment (doc. # 40).

Mr. Busby allegedly used KB to cover up and carry out the alleged ERISA and LMRA violations. Additionally, the Funds allege common law fraud against Mr. Busby in his individual capacity (Count VI), because he allegedly participated in a scheme to deny the Funds and the Union benefit contributions and dues in three overarching ways: by "knowingly and intentionally" (1) submitting false records to the Funds; (2) paying employees through KB to avoid paying required contributions and dues; and (3) failing to report hours of covered work performed by LCJ employees to avoid paying contributions and dues (doc. # 32: Compl. at ¶¶ 36-39).[2] Plaintiffs seek to recover delinquent contributions and dues owed by LCJ and KB, as well as interest, damages, litigation costs, and other legal and equitable relief the Court deems appropriate. (*Id.* at ¶¶ 58, 83). Finally, plaintiffs seek to pierce the corporate veil and to have Mr. Busby held personally liable for the delinquent amounts and damages owed to plaintiffs by KCJ and KB (Count VIII).

Mr. Busby has moved to dismiss with prejudice Counts VI and VIII – the only claims against him – for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, to dismiss them for failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b) (doc. # 45: Mot. to Dismiss at 1). For the following reasons, we deny Mr. Busby's motion.

I.

Rule 12(b)(6) requires dismissal if the allegations in the complaint, taken as true and with all reasonable inferences drawn in favor of the party making the claim, do not state a claim for which legal relief can be granted. Fed. R. Civ. P. 12(b)(6). To determine if the allegations are sufficient to state a claim, a reviewing court must determine if they make the asserted claim "plausible on its

---

[2] All references to "Compl." or "Complaint" refer to the First Amended Complaint, the most recent complaint.

face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). Although the material facts alleged must be taken as true and construed favorably toward the plaintiff, this rule does not apply to legal conclusions, supported only by conclusory statements. *Id.*

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In other words, the plaintiff must plead the "who, what, when, where, and how," of the alleged fraud. *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 401 (7th Cir. 2009) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). The heightened pleading requirement of Rule 9(b) serves several important purposes: "(1) to inform the defendants of claims against them and to enable them to form an adequate defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect defendants from unfounded charges of fraud which may injure their reputations." *United States SEC v. Benger*, 697 F. Supp. 2d 932, 937 (N.D. Ill. 2010) (internal quotations and citations omitted).

## II.

The following facts alleged in the Complaint are those that we consider material to Mr. Busby's motion, and that we take as true for purposes of the present motion. The Funds are multiemployer benefit plans as defined by ERISA, established and maintained according to their respective Agreements and Declarations of Trust (Compl. at ¶ 3). LCJ is an Illinois corporation and an employer within the meaning of ERISA and the LMRA (*Id.* at ¶ 5). Mr. Busby is LCJ's owner,

president and/or managing officer/director (*Id.* at ¶¶ 6, 40). KB is also an Illinois corporation and an employer under ERISA and the LMRA (*Id.* at ¶ 7). Mr. Busby is also the owner, managing officer and/or director of KB (*Id.* at ¶¶ 8, 67).

LCJ and the Union – a labor organization under the LMRA – are parties to successive collective bargaining agreements ("CBAs"), the latest of which became effective on June 1, 2006 (Compl. at ¶ 9). Under the respective Agreements and Declarations of Trust and the CBAs, LCJ must make contributions on behalf of its employees for pension and health and welfare benefits to the Funds, and must pay dues to the Union (*Id.* at ¶ 11). LCJ must submit monthly remittance reports identifying the employees covered under the CBA and the amount of contributions to be remitted to the Funds on behalf of each covered employee (*Id.*). Contributions which are not submitted in a timely fashion are assessed twenty percent liquidated damages plus interest (*Id.*). LCJ is also required to submit its books and records to the Funds for audits, as well as to maintain a surety bond to insure future wages, pension and welfare contributions (*Id.* at ¶¶ 12-13).

In Count I of the Complaint, plaintiffs allege that LCJ's failed to submit contributions to the Funds in violation of Section 15 of ERISA, 29 U.S.C. § 1145, and Section 301 of the LMRA, 29 U.S.C. § 185 (Compl. at ¶ 17). The Funds allege that LCJ failed to submit a total of $84,026.90 in contributions to the various Funds for the audit period of September 1, 2006, through March 31, 2009 (Compl. at ¶ 14). The Funds calculated the total liquidated damages on the delinquent contributions to be $16,666.91 (*Id.* at ¶ 15). In addition, the Funds allege that LCJ is liable for $1,060.45 in audit costs during the relevant time period (*Id.* at ¶ 16).

In Count II of the Complaint, plaintiffs allege that LCJ failed to withhold, report, and forward $5,186.37 in Union dues that were deducted or should have been deducted from its employees'

4

wages during the audit period of September 1, 2006, through March 31, 2009 (Compl. at ¶ 21). Under the CBA, untimely dues and dues reports are assessed ten percent liquidated damages, calculated by the Funds to be $518.64 (*Id.* at ¶ 22). In Counts III, IV, and V, the Funds allege that LCJ violated ERISA and the LMRA for failure to submit reports and/or contributions to the Funds for the time period of January 2010 forward, and for failure to submit all its books and records for a requested audit for the period from April 1, 2009 forward (*Id.* at ¶¶ 25, 31, 33).

The Funds bring Count VI against Mr. Busby individually "because of his involvement in a scheme to deprive the Funds of benefit contributions and the Union of required dues" (Compl. at ¶ 36). Plaintiffs allege that "in order to avoid benefit contribution and dues' liability," Mr. Busby, as owner of LCJ, "knowingly and intentionally" submitted false books and records to the Funds, paid LCJ employees through KB, and failed to report hours of covered work performed by LCJ employees (*Id.* at ¶¶ 37-40). Plaintiffs allege that Mr. Busby's alleged fraud to avoid benefit contributions was demonstrated in several ways. *First*, two LCJ employees received a single paycheck for work performed by both (*Id.* at ¶ 42). *Second*, Mr. Busby altered the payee and check endorsement signature on multiple checks, of which plaintiffs attached copies to their Complaint (*Id.* at ¶¶ 43-44). *Third*, plaintiffs allege that Mr. Busby paid one employee in the form of checks made out to a company rather than to the individual (*Id.* at ¶¶ 49-50). *Fourth*, Mr. Busby provided the Funds with false bank statements from LCJ supported by allegedly false documentation for the September 1, 2006, through March 31, 2009, audit period, including misrepresentations of the number of hours worked by employees who performed covered work under the CBAs (*Id.* at ¶¶ 45-48). Plaintiffs maintain that the individuals whose names were fraudulently removed from the altered checks performed covered work during the September 1, 2006, through March 31, 2009 audit period, and

5

that Mr. Busby removed their names from the checks in order to avoid reporting the hours they worked and payment earned so as to avoid benefit contribution and dues' liability (*Id.* at ¶¶ 48, 51-53). Plaintiffs allege that they calculated the amounts of benefit contributions and dues owed for the September 1, 2006, through March 31, 2009 audit period based on Mr. Busby's alleged misrepresentations, resulting in them and the Union being deprived of required benefit contributions, dues, income, and information (*Id.* ¶¶ 54-56; Exs. B, C).

In Count VII, the Funds seek to impose alter ego or single employer liability on KB because KB and LCJ share equipment, employees, and their owner/manager (Mr. Busby); perform the same type of work; use the same business location; have the same supervisors or management personnel; and commingle their funds (Compl. at ¶¶ 59-71). In addition, plaintiffs ask the Court to pierce the corporate veil (Count VIII) as to Mr. Busby individually because he allegedly commingled his personal assets with those of LCJ and KB and shifted LCJ assets to KB to avoid his obligations to the Funds and the Union (*Id.* at ¶¶ 73-75). Moreover, plaintiffs allege that Mr. Busby directed KB employees to perform covered work subcontracted to LCJ, and used KB's bank account to pay LCJ employees (*Id.* at ¶¶ 77, 81). Plaintiffs allege that LCJ and KB are "undercapitalized in that both are unable to pay the contributions, dues and wages owed to their employees and to Funds, and that neither company "observe[d] corporate formalities" (*Id.* at ¶¶ 78-79).

For Mr. Busby's alleged fraud, plaintiffs seek "delinquent contributions, dues, interest, liquidated damages, accumulated liquidated damages, and attorneys' fees and costs . . .," and an equitable accounting of LCJ's books and records for the period of September 1, 2006, through March 31, 2009, and all other legal and equitable relief the Court deems just and proper (Compl. at ¶ 58).

As part of the alter ego and piercing the corporate veil theories of liability, plaintiffs ask the Court to find Mr. Busby and KB jointly and severally liable for these damages with LCJ (Count VIII).

### III.

Mr. Busby moves to dismiss the Funds' common law fraud claim (Count VI) against him under Rule 12(b)(6), on the grounds that ERISA and the LMRA preempt those claims, and under Rule 9(b), for failure to meet the heightened pleading standards for fraud. For the following reasons, we deny Mr. Busby's motion to dismiss.

### A.

Mr. Busby first argues that plaintiffs' common law fraud claim should be dismissed because it is preempted by ERISA. ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA preemption turns on the parameters of the phrase "relate to an employee benefit plan." *Id.* As the Seventh Circuit has observed, this critical phrase is "not . . . self-defining." *Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 774 (7th Cir. 2002). The Supreme Court has cautioned that if this "clearly expansive" phrase "were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere . . . ." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) ("*Travelers*") (internal citations and quotations omitted). Such a construction of the phrase "relate to" would run contrary to the strong presumption that "historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* at 654-55; *see also Sharp Elecs. Corp. v.*

*Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) ("[W]hile ERISA's preemption is broad, it does not sweep all state law off the table").

In an effort to clear the "murky waters of ERISA preemption," *Biondi*, 303 F.3d at 774, the Supreme Court has laid out standards to apply in interpreting the scope of the phrase "relate to." "A law relate[s] to a covered employee benefit plan for purposes of § 514(a) if it [1] has a connection with or [2] reference to such a plan." *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., Inc.*, 519 U.S. 316, 324 (1997) (internal quotations omitted). Under the second inquiry ("reference to such a plan"), the Supreme Court has held preempted "a law that imposed requirements by reference to ERISA covered programs," "a law that specifically exempted ERISA plans from an otherwise generally applicable garnishment provision," and "a common-law cause of action premised on the existence of an ERISA plan." *Id.* at 324-25 (internal citations and quotations omitted).

A law that does not refer to ERISA plans may yet be preempted if it has a "connection with" ERISA plans. *Dillingham*, 519 U.S. at 325. To determine whether a state law has this connection, the Supreme Court looks both to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Id.* "ERISA's primary objectives are to protect . . . the interests of participants . . . and their beneficiaries, by requiring the disclosure and reporting . . . of financial and other information . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." *Biondi*, 303 F.3d at 774.

Using this framework, the Seventh Circuit has interpreted Supreme Court precedent as identifying at least three instances where state law can be said to have a "connection with" or "reference to" employee benefit plans: "when it (1) mandate[s] employee benefit structures or their administration; (2) binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself; and (3) provides an alternative enforcement mechanism to ERISA. *Biondi*, 303 F.3d at 775 (citing *Travelers*, 514 U.S. at 658-60). A common law cause of action falls into one of these three categories when it is "premised on the existence of an ERISA plan," or relies, "for its very operation, on a direct and unequivocal nexus with the ERISA plan." *Biondi*, 303 F.3d at 778 (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)). When a fund's claim is one for common law fraud, a traditional area of state regulation, the defendant "bears the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Biondi*, 303 F.3d at 775.

Applying these standards, it is evident that plaintiffs' fraud claim is not preempted under either of the first two prongs of *Biondi*. In *Biondi*, the appeals court considered a common law fraud claim brought by plan fiduciaries to recoup money improperly expended due to a plan participant's fraudulent conduct. The Seventh Circuit held that the common law fraud claim was not preempted by ERISA: the claim did not mandate employee benefit structures or their administration, nor did it bind plan administrators to particular choices or preclude uniform administrative practices. 303 F.3d at 775. The appeals court held that the lawsuit was in the plan participants' and beneficiaries' best interests and was consistent with the trustees' fiduciary obligations: indeed, the suit was an "attempt to protect the financial integrity of the Fund." *Id.*; *see also Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 23 (2d Cir. 1996) (holding that ERISA did not preempt a common law fraud

9

claim by trustees of an employee benefit plan against a plan participant who falsely listed another person as an employee, who subsequently received more than $100,000 in medical benefits, which the suit sought to recover). The Seventh Circuit also held that permitting the fraud claim to proceed posed no potential to conflict with Congress's goal for national uniformity in the administration of ERISA plans. *Id.*

In the instant case, the Funds seek money they claim was improperly withheld by Mr. Busby due to his alleged fraudulent misrepresentations. As in *Biondi*, their lawsuit aims to benefit plan participants' and beneficiaries' best interests, and is consistent with a uniform application of the goals of ERISA. *See also Geller*, 86 F.3d at 23 ("allowing the plaintiffs to pursue their common law fraud claim would in no way compromise the purpose of Congress" in enacting ERISA, since "[t]he unauthorized diminution of pension benefits . . . is squarely at odds with the congressional purpose of protecting pension benefits"). As in *Biondi*, plaintiffs' common law fraud claim does not mandate employee benefit structures, bind employers or plan administrators to particular choices, or preclude uniform administrative practice. Moreover, as in *Biondi*, the alleged tort of common law fraud asserted here "clearly makes no direct reference to ERISA plans nor relies on the existence of such plans to operate." *Biondi*, 303 F.3d at 778.

The issue of whether preemption is appropriate under the third prong of *Biondi*, on the ground that plaintiffs are using a common law fraud claim as an alternative enforcement mechanism to ERISA's civil enforcement provision, warrants a more extended analysis. Where the state law does not expressly refer to ERISA or ERISA plans, the state law may act as an alternative enforcement mechanism where "the existence of a pension plan is a critical element of a state-law cause of action." *Biondi*, 303 F.3d at 776 (citing *De Buono v. NYSA-ILA Med. & Clinical Servs.*